911 F.2d 721
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
WILLIAM A. COOKE, INC., Plaintiff-Appellant,
v.
The COUNTY OF LOUISA, VIRGINIA, Board of Supervisors of
Louisa County, Virginia, Robert L. Johnson, individually and
in his capacity as Chairman and member of the Board of
Supervisors of Louisa County, Virginia, Willie L. Harper,
individually and in his capacity as Vice Chairman and member
of the Board of Supervisors of Louisa County, Virginia,
Frank B. Boxley, Jr., individually and in his capacity as a
member of the Board of Supervisors of Louisa County,
Virginia, John J. Purcell, Jr., individually and in his
capacity as a member of the board of Supervisors of Louisa
County, Virginia, H.H. Walton, Jr., individually and in his
capacity as a member of the Board of Supervisors of Louisa
County, Virginia, Defendants-Appellees,
and
Nancy F. Winks, individually and in her capacity as former
Chairman and member of the Board of Supervisors of Louisa
County, Virginia, Edward Hottinger, individually and in his
capacity as a former member of the Board of Supervisors of
Louisa County, Virginia, James King, individually and in his
capacity as a former member of the Board of Supervisors of
Louisa County, Virginia, Defendants.
 No. 89-1804.
 United States Court of Appeals, Fourth Circuit.
 Argued April 6, 1990.
Decided Aug. 1, 1990.
Rehearing and Rehearing In Banc Denied Sept. 6, 1990.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Richmond. James R. Spencer, District Judge. (CA-89-17-R)
 Patrick M. McSweeney, McSweeney, Burtch & Crump, Richmond, Va., (argued), for appellant; Stephen T. Gannon, Michael P. Kozak, McSweeney, Burtch & Crump, Richmond, Va., on brief.
 William Gray Broaddus, McGuire, Woods, Battle & Boothe, Richmond, Va., (argued), for appellees; Scott S. Cairns, McGuire, Woods, Battle & Boothe, Richmond, Va., on brief.
 E.D.Va.
 AFFIRMED.
 Before DONALD RUSSELL and MURNAGHAN, Circuit Judges, and GARBIS, United States District Judge for the District of Maryland, Sitting by Designation.
 PER CURIAM:
 
 
 1
 William A. Cooke, Inc. ("Cooke"), brought a 42 U.S.C. Sec. 1983 action against the County of Louisa, Virginia ("County"), and other defendants, because it was denied subdivision approval and building permits necessary for the development of some of its parcels of land. Cooke alleged that the County's failure to regard the parcels as within a "grandfather clause," which would exempt them from subdivision requirements, violated its constitutional rights to substantive and procedural due process and equal protection. The district court dismissed the company's substantive due process claim and entered summary judgment in favor of the defendants on the equal protection and procedural due process claims. Cooke has appealed the district court's rulings. Finding that no error was committed by the district court, we affirm its judgment.
 
 I.
 
 2
 Cooke is a real estate development company in Louisa County. At various times before 1983, Cooke had subdivision plats prepared by surveyors for land it owned in the County. Cooke did not record the plats or submit them for County approval. In 1983, the County Board of Supervisors amended the County's subdivision ordinance. Under the amended ordinance, contemplated roads in the Cooke subdivisions did not meet certain standards. Therefore, Cooke's plats were ineligible for County approval.
 
 
 3
 Section 15.1-473 of the Virginia Code mandates compliance with local subdivision ordinances. For those localities that have subdivision ordinances, the statute prohibits the selling of any land within a subdivision until the plat of the subdivision is duly approved by the local governing body and is recorded. Va.Code Ann. Secs. 15.1-473(b) & (c). But the statute does contain a grandfather clause, exempting subdivisions "lawfully created prior to the adoption of a subdivision ordinance applicable thereto." Id. Sec. 15.1-473(c).
 
 
 4
 Prior to 1983, the County regarded all subdivisions as "lawfully created" when a plat of the subdivision was prepared by a land surveyor and thus the County only applied its subdivision ordinance prospectively, to subdivisions that had not been so created before the effective date of the ordinance. If the ordinance became effective between the date of plat preparation and the date that the plat was submitted for recordation, in the County's view, the subdivision fell within the grandfather clause. Similarly, the County regulated subdivisions according to the ordinance in effect when the subdivision plat was prepared by the surveyor.
 
 
 5
 With the passage of the 1983 amendments, however, the County changed its interpretation of "lawfully created." The County considered a subdivision to be lawfully created on the day that the plat was submitted for recordation. Thus, no unrecorded subdivisions could fall within the grandfather clause, regardless of when the plat had been prepared. Between 1983 and November 1986, the County adhered to the view that only plats meeting the then current provisions of the subdivision ordinance could be recorded.
 
 
 6
 In late 1986, a land owner in the County, John Thomasson, submitted a subdivision for approval by the Board of Supervisors ("Board"), the body authorized to approve subdivisions in Louisa County. Similar to the Cooke subdivisions, the Thomasson subdivision's plat was prepared before 1983 but had not been recorded. Because Thomasson's subdivision did not comply with the 1983 amendments, it could not be approved under the subdivision ordinance. Thomasson, however, had substantially developed parcels of the subdivision in reliance on the superseded ordinance. He claimed his reliance gave him a vested right to continued application of the old ordinance to his subdivision.
 
 
 7
 In response to Thomasson's argument, the Board's legal counsel, William Hefty, recommended a vested rights analysis for determining when a subdivision is "lawfully created." The Board applied Hefty's analysis to the Thomasson subdivision and determined that Thomasson had acquired a vested right to application of the subdivision ordinance as it existed prior to 1983.
 
 
 8
 Accordingly, on November 21, 1986, the County Administrator wrote the Clerk of the Court and advised him that, while the Board could not approve Thomasson's subdivision because it did not comply with the amended ordinance, such approval was not required because the subdivision had been lawfully created before the adoption of the 1983 amendments. Thus, the Clerk was told that the Thomasson plat could be recorded.
 
 
 9
 Upon receiving the Administrator's letter, the Clerk recorded not only the Thomasson subdivision but also any subdivision plat submitted to him which had been prepared prior to 1983. Eighteen of the Cooke subdivisions were among those that the Clerk erroneously recorded.[1]
 
 
 10
 During late 1986 and 1987, both the County Attorney and the County Administrator invited Cooke to submit its subdivision plats to the Board for review under the same guidelines applied to Thomasson. Cooke, however, never submitted its plats for such a review. Since the Board had not approved any of the Cooke subdivision plats, the County Administrator refused to grant building permits for the Cooke subdivisions even though the subdivision plats had been accepted for recordation by the Clerk.
 
 
 11
 Another landowner in the county, Charles Valentine, had prepared a plat for his subdivision in 1982. Like the Cooke subdivisions, the Valentine subdivision did not comply with the 1983 amendments but also was erroneously recorded by the Clerk in December 1986. In addition, Valentine applied for a variance in 1986. The County Planning Commission granted the variance, a private road waiver, subject to several conditions. Valentine's attorney, however, stated in an affidavit that it would be impossible to meet the conditions because of subsequent sales of some of the parcels. He also stated that no property owner's association had been formed and no road completion construction bond had been posted with the County as required by the variance. One building permit was approved for the Valentine subdivision based on the variance.
 
 
 12
 In March 1988, the Board again changed its interpretation of "lawfully created." The Board approved Resolution Number 2, which provides that subdivisions are to be governed by the ordinance in effect at the time a subdivision plat is recorded. The Resolution also provides that building permits will be issued only for parcels in subdivisions complying with the 1983 amendments. Thus, the Board returned to the interpretation it had used between 1983 and 1986, under which it approved no unrecorded subdivisions that did not comply with the subdivision ordinance.
 
 
 13
 In the United States District Court for the Eastern District of Virginia, Cooke instituted suit against the County, the Board, and each of the Board members in their individual capacities. Suing under 42 U.S.C. Sec. 1983, Cooke alleged that the Board's actions in denying County approval and building permits to its subdivisions violated substantive and procedural due process and equal protection under the United States Constitution.
 
 
 14
 In attempting to show that the Board discriminated against it, Cooke pointed to the Thomasson and Valentine subdivisions as well as to three other subdivisions--Pine Harbor, Wildwood, and Walnut Woods--that are similarly situated yet being developed without the County's objection. The Pine Harbor subdivision had a plat prepared and recorded in 1982; it does not comply with the 1983 amendments. Wildwood and Walnut Woods had plats prepared before the passage of 1977 amendments to the subdivision ordinance. Allegedly, the County has routinely approved building permits for all of these subdivisions, in violation of the requirements of Resolution Number 2.
 
 
 15
 The district court dismissed Cooke's substantive due process claim and granted summary judgment in favor of the defendants on Cooke's equal protection and procedural due process claims. Cooke has appealed all three of the rulings. We review each of them in turn.
 
 II.
 
 16
 Cooke alleged below that the defendants arbitrarily and capriciously refused to approve its subdivision plats or issue building permits. Although one may question Cooke's reference to the claim as one involving "substantive" due process, we have indeed held that the arbitrary denial of a land use permit may provide the basis for a due process challenge. See Scott v. Greenville County, 716 F.2d 1409, 1420-21 (4th Cir.1983). Cooke argued that the defendants' actions, particularly the passage of Resolution Number 2 in 1988, were capriciously directed at Cooke itself. Cooke now contends that because the question of the defendants' true motivation behind their actions was in dispute, the district court's dismissal of its substantive due process claim was improper.
 
 
 17
 Scott held that, in order to make out a due process claim, a plaintiff must first establish that he was deprived of an interest protected by the due process clause. 716 F.2d at 1419. To demonstrate a constitutionally protected property interest, one "must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Board of Regents v. Roth, 408 U.S. 564, 577 (1972).
 
 
 18
 The district court reasoned that Cooke had no entitlement to building permits or subdivision approval because Cooke's subdivisions did not conform to the County requirements. The only way Cooke could be considered to have an entitlement is if its subdivisions fell within the grandfather clause, thereby making the subdivision requirements inapplicable. The Virginia Code exempts only those subdivision plats that were lawfully created prior to the adoption of the applicable ordinance. Va.Code Ann. Sec. 15.1-473(c).
 
 
 19
 The district court interpreted "lawfully created" to mean something more than a surveyor's preparation of a plat. The judge noted that he found no guidance from the statute itself or any interpretive cases. But he reasoned that plat preparation involves no legal approval, no government recognition, and no public notice. A plat is merely a plan, with no reliance placed on it and no guarantee that it will exist in the future. Indeed, the court advanced the possibility that if plat preparation alone established lawful creation, a developer could get around future enactments of land regulations simply by shelving several plats with the prospect of pulling them out once an amendment to the ordinance was passed. Because Cooke did not record its subdivisions until December 1986 and because the subdivisions were not "lawfully created" prior to the enactment of the 1983 amendments, the district court concluded that Cooke had no entitlement sufficient to allow it to make out a due process claim.
 
 
 20
 Cooke also asserts that it acquired a property interest in the issuance of building permits. Cooke's claim is that an entitlement arose because of the prior understanding that subdivisions were lawfully created upon preparation by the surveyor. Cooke points to the understanding in existence before enactment of the 1983 amendments and at the time the County recorded its plats.
 
 
 21
 But Cooke's reliance on prior practices by the County does not take its interest beyond "mere expectation" to the level of "legitimate entitlement." Cooke's claim of entitlement is particularly weak when considering that the alleged past practices of the County contravene the statutory authority for "grandfathering." The district court's interpretation of "lawfully created" was entirely correct and it would be hard to find that Cooke has an entitlement to a past practice that results in the statute being ignored.
 
 
 22
 Cooke also claims that it has an entitlement because the County Clerk actually recorded its subdivision plats in December 1986. The contention is that, after a plat is recorded, a local government has no authority to establish new standards. The County's only recourse, according to Cooke, is to apply to the state court under Virginia Code Sec. 15.1-482 for a declaration that the Clerk mistakenly interpreted the law.
 
 
 23
 But we conclude that the district court properly rejected Cooke's argument as to the Clerk's recordation of the plats because, under the Virginia Code, the Clerk had no authority to record any subdivision plat that had not been approved as required. Va.Code Ann. Sec. 15.1-473(e). Because the County, which has the power to enforce subdivision ordinances, had not lawfully approved Cooke's plats as required by the ordinance, the Clerk's recording was unauthorized by law.
 
 
 24
 Cooke thus has no claim of entitlement to any building permits or subdivision approval. Its allegation of a violation of due process because of the arbitrary and capricious nature of the defendants' actions fails to state a claim and therefore the district court acted properly in dismissing it.
 
 III.
 
 25
 Cooke argued below that the defendants permitted development in subdivisions similarly situated to its own subdivisions yet refused to allow for the development of its subdivisions. Cooke argued that the defendants' differential treatment violated the equal protection clause. Cooke now argues that the district court erred in granting summary judgment in favor of the defendants on the equal protection claim.
 
 
 26
 The court reasoned that, as to the Valentine subdivision, proof of only one building permit had been introduced and uncontested evidence showed that the permit was based on a conditional variance. As to the other subdivisions, the district court reasoned that they were treated differently because they were all submitted for approval when the County applied a different meaning of "lawfully created." The policy in use at the time the other subdivision plats were submitted for approval either provided that the plats were lawfully created upon mere preparation or that the developers qualified under a "vested rights" analysis. The fact that different grandfathering policies were applied at different times explained the difference in treatment.
 
 
 27
 Quite simply, we do not face subdivisions similarly situated but differently treated. The Valentine subdivision was granted a conditional variance; Cooke did not apply for such a variance. The Thomasson subdivision was approved by the County at a time when the County employed a vested rights analysis; Cooke was given an opportunity to present its plats to receive that same analysis, but did not do so. The other three subdivisions' plats were submitted for approval at a time when the grandfathering policy of the County looked to the date of preparation of the plat; Cooke submitted its plats for approval at a time when the County looked only to recordation to determine when a subdivision was lawfully created. To require a County to continue applying the same treatment that it had previously afforded under the name of equal protection would effectively prevent the County from changing its policies. The district court's summary judgment on Cooke's equal protection claim was not in error.
 
 IV.
 
 28
 Cooke argued below that the Board's adoption of Resolution Number 2 was effected without notice or an opportunity to be heard as required by Virginia law. The district court rejected Cooke's claim, reasoning that Resolution Number 2 was merely a statement by the Board of the scope of Sec. 15.1-473 of the Virginia Code. As such, the notice and hearing requirements of Sec. 15.1-431 were inapplicable. Cooke now contends that the district court erred in rejecting its claim.
 
 
 29
 Cooke's argument depends on its assertion that Resolution Number 2 was an amendment to the subdivision ordinance. But the district court's conclusion was correct. The real authority governing the grandfathering of subdivisions comes from the Virginia Code. The County's resolution only sets forth the Board's understanding of that authority.
 
 V.
 
 30
 For the reasons set forth above, the judgment of the district court is
 
 
 31
 AFFIRMED.
 
 
 
 [1]
 There was a difference between the Thomasson and the Cooke subdivisions, overlooked or ignored by the Clerk, in that proof of substantial development was lacking in the Cooke subdivisions